IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| Lakeythia Gates, On Behalf of Herself and All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 6:22-cv-00045-ADA-DTG |
| Support Services Group, Inc. (a/k/a Legacy Support Services, LTD and/or Legacy Support Services, LLC), | § § § § § | |
| Defendant. | § § | |

**JOINT MOTION TO APPROVE SETTLEMENT
AND DISMISS CASE WITH PREJUDICE**

Plaintiff Lakeythia Gates ("Plaintiff") and Defendant Support Services Group, Inc. (a/k/a Legacy Support Services, LTD and/or Legacy Support Services, LLC) ("Defendant"), file this Joint Motion to Approve Settlement and Dismiss this Case with Prejudice, respectfully showing as follows. An Appendix containing documents cited in support of this Motion is filed separately, and those documents are incorporated by reference as if set forth fully herein.

## I.   SUMMARY

This lawsuit was brought by Plaintiff, individually and as a collective action, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA").

Defendant operates a call center business operation. Defendant's customers are third party entities who need support assistance for their customers. Plaintiff was employed by Defendant as an hourly paid customer service representative at one of Defendant's call centers in McLennan County, Texas.

Plaintiff's lawsuit alleges that Defendant failed to pay all overtime wages owed primarily because it: (1) did not include bonus pay, along with base hourly pay, in calculation of the FLSA's regular rate of pay, and (2) did not count certain short breaks during the workday as compensable time. Defendant denies Plaintiff's allegations and denies that it violated the FLSA.

Plaintiff and Defendant (collectively the "Parties") have reached a settlement agreement (the "Settlement Agreement") relative to the claims of Plaintiff and 6,756 putative collective action members. The maximum gross amount of that settlement is $180,000.00 (the "MGSA") and covers work performed by Plaintiff and the putative collective action members between May 1, 2020 and May 1, 2022. Only putative collective action members who timely submit claim forms to the Claims Administrator are bound by the Settlement Agreement. As this is an opt-in as opposed to an opt-out procedure, putative collective action members who do not timely return claim forms do not release any claims against Defendant.

The Settlement Agreement sets for the following allocations from the $180,000.00 MGSA:

1. $5,333.63 paid to Plaintiff for a full release of any and all claims,

2. $29,906.00 to the Claims Administrator to issue notice packets by mail and, where available, e-mail to the 6,756 putative collective action members, process returned claim forms, issue payments, and perform other services needed to implement the terms of the Settlement Agreement,

3. 33% of the MGSA (before deduction for Plaintiff's Payment and Claims Administrator Settlement Expenses) to Plaintiff's counsel ("Class Counsel") for legal fees totaling $59,400.00, and

4. $5,909.00 to Class Counsel for litigation costs.

The MGSA amount remaining after deduction of the aforementioned payments to Plaintiff, the Claims Administrator, and Class Counsel is known as the Revised Gross Settlement Amount ("RGSA"). The RGSA equals $80,947.37. Payments from the RGSA to Authorized Claimants (i.e., those who timely submit a claim form to the Claims Administrator) for a limited release of claims (FLSA only between May 1, 2020 and May 1, 2022) are based on the number of workweeks worked by each of the Authorized Claimants as follows. First, the RGSA is divided by the total number of workweeks for the putative collective action members (106,498 workweeks). That results in an average weekly amount of $0.76. Authorized Claimants will be paid that average weekly amount times the number of weeks they respectively worked in the relevant time period. The largest number of workweeks for any putative collective action member is 104 weeks, which would equal a gross payment to such person in the amount of $79.05. The fewest number of workweeks for any putative collective action member is one week, which would equal a payment to such person in the gross amount of $0.76. The median number of workweeks for putative collective action members is eight weeks, which would equal a gross payment in the amount of $6.08.

The Parties ask that the Court certify a FLSA collective action consisting of Plaintiff and putative collective action members, approve the terms of the Settlement Agreement, authorize the Claims Administrator to issue notice packets and take other necessary actions, and dismiss this lawsuit with prejudice.

## II.    PROCEDURAL HISTORY AND SETTLEMENT AGREEMENT TERMS

This lawsuit was filed by Plaintiff on January 12, 2022 and alleges Defendant failed to pay Plaintiff and the putative collective action members all overtime wages owed because it:

      a.    did not include bonus pay in calculating the FLSA regular rate of pay (the "regular rate claim"),

      b.    did not treat Plaintiff's breaks in time that were 20 minutes or less during the FLSA's continuous workday as compensable time (the "unpaid short breaks in time"), and

      c.    did not treat breaks in time that were longer than 20 minutes during the FLSA's continuous workday (which were not bona-fide meal breaks) as compensable time due to Plaintiff being logged out by Defendant's employees or time-keeping system (the "unpaid longer breaks in time").

(Doc 1, ¶ 5). Ultimately, Plaintiff's counsel determined that only the regular rate claims and unpaid short break claims should be pursued.

Defendant produced time and payroll records for Plaintiff and the 6,756 putative collective action members. Plaintiff's counsel retained an expert witness with EmployStats Consulting Partners in Austin, Texas to review that time and pay data relative to the regular rate claims and unpaid short break claims. (App. p. 48 – 49, ¶ 25)

After months of negotiation among counsel for the Parties, and based on payroll records produced by Defendant and the analysis of those records by Plaintiff's expert witness, the collective action Settlement Agreement was reached. (*See* Settlement Agreement at App. pp. 1 – 38; pp. 48, ¶ 24 – p. 51, ¶ 32).

The Court granted FLSA collective action certification in this case on January 16, 2024. (Doc. 24). Due to a tentative settlement being reached soon thereafter, the Parties filed a joint motion asking the Court to stay the deadlines in that order on February 23, 2024. (Doc. 26). The Court granted that motion and instructed the parties to file appropriate dismissal papers or move for entry of a revised scheduling order no later than October 10, 2024.

A.      **Maximum Gross Settlement Amount ("MGSA") Allocation**

The Settlement Agreement establishes a Maximum Gross Settlement Amount of $180,000.00. (App. p. 12, ¶ III.A.). Agreed payments from the MGSA are as follows if the Court approves the Settlement Agreement.

1.      **Allocation of the MGSA to Plaintiff**

In exchange for a full release of any and all claims, Plaintiff will be paid $5,333.63 from the MGSA ("Plaintiff's Payment"). (App. p. 7, ¶ I.W.).

Plaintiff's damage calculations for both claims are higher than typical putative collective action members. For example, Plaintiff's maximum overtime wage damages for the regular rate claim are $50.75 whereas the average for the putative collective action members is $12.98. (App. p. 61, ¶ 38.h.i.). Plaintiff's maximum overtime wage damages for the unpaid short break claim are $116.08 whereas the average for the putative collective action members is $34.53. (App. p. 61, ¶ 38.h.ii.). Plaintiff's maximum overtime wage damages, with full liquidated damages in an amount equal thereto, totals $333.66.

Also, unlike the putative collective action members, Plaintiff's release of claims includes all claims, known and unknown, and is not limited to the FLSA claims in the lawsuit. (App. pp. 18-19, ¶ VI.A.). That release of claims includes Plaintiff's Family Medical Leave Act claims against Defendant, which are identified in her original complaint in this lawsuit. (*See* Doc. 1, p. 3 n.1).

Furthermore, unlike the putative collective action members who are only releasing FLSA claims against Defendant for the time period between May 1, 2020 and May 1, 2022, Plaintiff's released claims cover all time periods to the date the Court enters any Order approving the Settlement Agreement. (App. pp. 18-19, ¶ VI.A.).

Therefore, the payment of $5,333.63 to Plaintiff is fair and reasonable.

The Claims Administrator will deduct and submit Plaintiff's share of applicable FICA and state unemployment, unemployment insurance and back-up withholding taxes (hereafter "Payroll Taxes") from Plaintiff's Payment and the employer's share of Payroll Taxes from the MGSA. (App. p. 26, ¶ X.B.).

**2. Allocation of the MGSA to the Settlement Claims Administrator**

The amount from the MGSA to be paid to the Settlement Claims Administrator to perform the services identified in the Settlement Agreement is a maximum of $29,906.00. (App. p. 8, ¶ I.EE.). That fee is reasonable given the work and services necessary for a 6,756 member putative collective action class. (App. p. 51, ¶ 33). Postage for mailing of the Notice Packet (consisting of the notice of the settlement and claim form) alone equals $9,763.00. (*Id*.). The Settlement Agreement calls for the Claims Administrator to perform many duties, including:

1. Mail, and were available, e-mail the Notice Packet to the putative collective action members;

2. Process Notice Packets that were returned undeliverable, perform address traces on same, and attempt to reissue Notice Packets as appropriate;

3. Establish and operate a phone support for putative collective action members;

4. Establish a website where putative collective action members can submit online claim forms;

4. Receive, process, and validate returned claim forms and attempt to address any deficiencies with same;

5. Calculate settlement payments and payroll taxes for Authorized Claimants;

6. Submit settlement payments to Authorized Claimants and remit payroll taxes to the appropriate authorities; and

7. Issue tax reporting forms (i.e. W-2s) to Authorized Claimants.

(App. pp. 20-24, ¶ VII.B.).

### 3. Allocation of the MGSA to Legal Fees and Costs

The amount to be paid to Class Counsel for legal fees is 33% of the MGSA (before deduction for Plaintiff's Payment and Claims Administrator Settlement Expenses), which totals $59,400.00. (App. p. 17, ¶ V.A.). The amount of the MGSA to be allocated to Class Counsel for litigation costs is $5,909.00. (*Id*.). Therefore, the total legal fees and litigation costs to be paid from the MGSA to Class Counsel under the settlement agreement are $65,309.00. The declaration of attorney Allen R. Vaught is provided with this Motion in support of the requested legal fees and costs. (App. pp. 39-68).

### 4. Allocation of the MGSA to the Revised Gross Settlement Amount ("RGSA") and Authorized Claimants

The MGSA amount remaining after deduction of the payments to Plaintiff, the Claims Administrator, and Class Counsel is known as the RGSA. (App. p. 8, ¶ I.AA.). If the aforementioned payments are approved by the Court, then the RGSA equals $80,947.37.

Payments from the RGSA to Authorized Claimants (i.e., those who timely submit a claim form to the Claims Administrator) for a limited release of claims (FLSA only between May 1, 2020 and May 1, 2022) are based on the number of workweeks worked by each of the Authorized Claimants as follows. (App. pp. 14-15, ¶ IV.E.).

First, the RGSA is divided by the total number of workweeks for the putative collective action members (106,498 workweeks). (*Id.*, App. p. 48, ¶ 25). That results in an average weekly amount of $0.76. Second, Authorized Claimants will be paid that average weekly amount times

the number of weeks they respectively worked in the relevant time period. (App. pp. 14-15, ¶ IV.E.). The largest number of workweeks for any putative collective action member is 104 weeks, which would equal a gross payment to such person in the amount of $79.05. (App. p. 49, ¶ 26). The fewest number of workweeks for any putative collective action member is one week, which would equal a payment to such person in the gross amount of $0.76. (*Id*.). The median number of workweeks for putative collective action members is eight weeks, the value for which (if it were allocated that way) would equal a gross payment in the amount of $6.08. (*Id*.).

The balance of the RGSA not paid to Authorized Claimants by the Claims Administrator will revert to Defendant. (App. p. 23, ¶ VII.B.25.).

**B.     The Notice Packet**

Notice packets, consisting of the "Notice of Opportunity to Receive Money from an Overtime Wage Case Settlement" and the "Claim Form" (the "Notice Packet") shown in Exhibit A and A1, respectively, to the Settlement Agreement will be mailed by the Claims Administrator to the 6,756 the putative collective action members along with a postage-paid and self-addressed return envelope. (App. pp. 15-16, ¶ IV.I., pp. 35 - 38). That Notice Packet will also be e-mailed to putative collective action members to their last known e-mail address, if any. (App. p. 16, ¶ IV.I.).

**C.     Scope of the Release by Plaintiff and Authorized Claimants**

As explained in detail *supra*, Plaintiff consents to a full release of any and all claims against Defendant in return for payment of $5,333.63. (App. p. 18, ¶ VI.A.). The duration of that general release of claims covers all time periods up to and including the date the Court enters any Order approving the Settlement Agreement. (*Id*.).

Any Authorized Claimant who timely submits a claim form to the Claims Administrator and receives a settlement check is agreeing to release any and all FLSA claims he/she has or may

have against the Defendant for the time period between May 1, 2020 and May 1, 2022. (App. p. 19, ¶ VI.B.). However, excepted from the limited FLSA claim release by Authorized Claimants are any claims currently filed or pending against Defendant with or before: (1) any federal agency, such as the U.S. Equal Employment Opportunity Commission; (2) any state agency, such as the Texas Workforce Commission (including any claim for unemployment benefits); (3) any arbitrator(s) and/or mediator(s); and/or (4) any proceeding covered by a collective bargaining agreement. (*Id*.).

A putative collective action member who does not timely return a completed Claim Form and receive a settlement check is not waiving or releasing any claims they may have against Defendant. (App. p. 6, ¶¶ I.O. & I.P., p. 19, ¶VI.B.). Only putative collective action members who opt-into this settlement are releasing any claims against Defendant. (*Id*.).

## III.    REQUESTED RELIEF

The Parties respectfully request that the Court grant this Motion and enter an order or orders approving the Settlement Agreement, requiring the implementation of the terms of the Settlement Agreement, and dismissing this lawsuit with prejudice.

### A.    Request for Limited FLSA Collective Action Certification for Purposes of Settlement

To the extent necessary as the Court has already issued an Order granting collective action certification (Doc. 24), the Parties ask that the Court certify a limited FLSA collective action consisting of Plaintiff and the 6,756 putative collective action members for purposes of effectuating the Settlement Agreement.

The FLSA authorizes employees to bring a collective action against employers to recover unpaid overtime. 29 U.S.C. § 216(b). A collective action is particularly appropriate when it permits

the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged activity." *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

The FLSA specifically contemplates similarly situated employees joining together on a collective action basis to bring a claim against an employer who has allegedly violated the FLSA. *See* 29 U.S.C. § 216(b). However, unlike Rule 23 class actions, collective actions proceed on an "opt-in" rather than an "opt-out" basis. *See Tolentino v. C&J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010). Accordingly, only putative collective action members who "opt-in" to a case are bound by the results of that case, and the claims of absent collective or class action members are not released relative to a FLSA collective action settlement or judgment.

Here, for purposes of settlement only, the Parties stipulate that Plaintiff and the putative collective action members are similarly situated under the FLSA. The Notice Packet will inform the putative collective action members of the gross settlement money (before payroll taxes) they will receive if they become Authorized Claimants. The Notice Packet will also inform putative collective action members of the scope of the release they are providing Defendant if they become Authorized Claimants and receive the settlement checks relative to the Settlement Agreement.

**B.**     <u>**Request for Approval of the Settlement Agreement**</u>

The Parties request that the Court approve the Settlement Agreement at Appendix Pages 1 - 38.

### 1. The Settlement Agreement is a Fair and Reasonable Resolution of a Bona Fide Dispute Under the FLSA

FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Villeda v. Landry's Restaurants, Inc.,* No. CIV.A H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (citing *Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir.1982)). The general rule

is that FLSA claims cannot be waived by private settlement unless a court or the U.S. Department of Labor determines that the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Bodle v. TXL Mortg. Corp.*, 788 F.3d 159, 165 (5th Cir. 2015).

"If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Lynn's,* 679 F.2d at 1354. When a court scrutinizes a FLSA settlement agreement, it must determine that the compromise is a fair and reasonable resolution of a bona fide dispute over the FLSA's provisions. *See Lynn's Food Stores*, 679 F.2d at 1355. "The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action." *Sims v. Hous. Auth. City of El Paso,* No. EP-10-CV-109-PRM, 2012 WL 10862119, at *2 (W.D. Tex. Feb. 29, 2012) (citations omitted). "Rather the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Id.* (citations omitted).

The Settlement Agreement is based on overtime wages relative to the regular rate claims and unpaid short break claims. (App. p. 9, ¶ II.a.-b.).

As to the regular rate claim, Plaintiff contends that Defendant violated the FLSA by not including bonus pay, along with hourly pay, in calculating the FLSA regular rate of pay and corresponding overtime wages owed. (Doc. 1, ¶ 5.a.; App. p. 9, ¶ II.a.). The FLSA provides that, with a few limited exceptions, all remuneration given to an employee must be included in the employee's regular rate calculation. 29 U.S.C. § 207(e); 29 C.F.R. § 778.108; *accord Allen v. Board of Pub. Educ. For Bibb Cty.*, 495 F. 3d 1306, 1311 (11th Cir. 2007). Among those exceptions is pay that is a discretionary bonus. *See* 29 U.S.C. § 207(e)(3). Defendant denies that the bonuses paid to Plaintiff and the putative collective action members was required to be included in the FLSA regular rate of pay. If Defendant were to prove that such bonus pay was discretionary,

then Plaintiff and the putative collective action members would be owed no money for those claims. Assuming all factors were determined in Plaintiff's favor, which is disputed, Plaintiff's expert witness calculated the maximum amount of damages for the regular rate claims to total $87,723.36, with a weekly average per putative collective action member for those damages of $0.82. (App. pp. 49-50, ¶ 27).

Regarding the unpaid short break claim, Plaintiff contends that Defendant did not count breaks in time during the workday that were 20 minutes or less as compensable time under the FLSA, thereby resulting in unpaid overtime wages for workweeks in which more than 40 hours were worked. (Doc. 1, ¶ 5.b.; App. p. 9, ¶ II.b.). Defendant denies that claim. Under the FLSA, breaks in time during the workday that are 20 minutes or less must be treated as compensable time under the FLSA. *See Naylor v. Securiguard, Inc.*, 801 F.3d 501, 505 (5th Cir. 2015); *Gomez v. MI Cocina Ltd.*, 3:14-CV-2934-P, 2015 WL 13852376, at *2 (N.D. Tex. Dec. 16, 2015). Plaintiff's expert witness calculated the maximum amount of damages for the unpaid short break claims to total $150,047.92, with a weekly average per putative collective action member for those damages of $1.52. (App. p. 50, ¶ 28).

The FLSA allows the Court discretion to award liquidated damages in a maximum amount equaling unpaid overtime wages. 29 U.S.C. § 216(b); *Olibas v. Native Oilfield Services, LLC*, 104 F. Supp. 3d 791, 809 (N.D. Tex. 2015*), aff'd sub nom. Olibas v. Barclay*, 838 F.3d 442 (5th Cir. 2016). Liquidated damages are not sought in the Settlement Agreement for putative collective action members. Such damages are not mandatory, and a compromise was made on that issue to facilitate the Parties reaching a settlement.

The Settlement Agreement in this lawsuit was the product of arm's length negotiations by experienced counsel and has the effect of (1) providing relief to Plaintiff and putative collective

action members who decide to return Claim Forms and become Authorized Claimants, and (2) eliminating the inherent risks both sides would bear if this litigation continued to resolution on the merits. (App. p. 50, ¶ 29). Such negotiations allowed the Parties to bridge the gap between the Parties' settlement positions and obtain the resolution described. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Id.*, at *3 (recognizing that there is a strong presumption in favor of finding a settlement fair and that the fact that the settlement is the negotiated result of an adversarial proceeding is also an indication of fairness).

The Settlement Agreement is also fair and reasonable because substantial obstacles exist if litigation continues, and the settlement provides immediate relief for Plaintiff and Authorized Claimants. The Parties disagree about the merits of Plaintiff's claims, the viability of Defendant's defenses and the proper calculation of damages, if any. (App. pp. 50-51, ¶ 30).

Moreover, given the FLSA's general two year statute of limitations that may be extended to three years only if the employee proves the employer willfully violated the FLSA (*see* 29 U.S.C. § 255(a)), the claims of the putative collective action members would mostly be time barred. (App. p. 51, ¶ 31). The Settlement Agreement applies to the time period between May 1, 2020 and May 1, 2022. (App. p. 14, ¶ IV.E.1.). As a collective action member's claim under the FLSA is considered "commenced" only with the filing of a consent to join pursuant to 29 U.S.C. § 256(b), none of the putative collective action members would have claims within the FLSA two year limitations period, and most of their claims would be either time barred or subject to the higher proof standard for the third year of the limitations period.

Without settlement, the Parties would have to engage in additional discovery, including depositions of Plaintiff, some putative collective action members, Plaintiff's expert witness on damages, and witnesses(s)/representative(s) for Defendant, litigate the merits of the claims and

defenses in this lawsuit, and potentially have appellate proceedings. (App. p. 51, ¶ 32). Under such a scenario, Plaintiff and the Authorized would not see monetary relief from this case, if any, until a significant time in the future. (*Id*.). The Settlement Agreement brings an immediate benefit to Plaintiff and the Authorized Claimants.

### 2. Legal Fees and Costs

The FLSA mandates the payment of reasonable attorney's fees and costs to prevailing plaintiffs. 29 U.S.C. § 216(b). The declaration of Class Counsel, Allen R. Vaught, is provided in support of this request for approval of legal fees and costs. (App. pp. 39 - 68).

"The Court must carefully scrutinize the attorneys' fees award in a common fund settlement because the interest of the attorneys conflict with those of the class." *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2014 WL 7332551, at *5 (N.D. Tex. Nov. 12, 2014)*, report and recommendation adopted in part,* No. 3:11-CV-2743-O, 2014 WL 7336889 (N.D. Tex. Dec. 24, 2014). "Because the Court has a duty to review the fee request, it is not bound by the agreement of the parties as to the amount of the attorneys' fees." *Id.*

As part of the Settlement Agreement, the Parties have agreed that Class Counsel should be paid 33% of the MGSA for legal fees, totaling $59,400.00. (App. p. 17, ¶ V.A.). The amount of the MGSA to be allocated to Class Counsel for litigation costs is $5,909.00. (*Id*.). The compensation sought for Class Counsel's legal fees – 33% of the common fund – is well within the usual range of percentages awarded in similar cases. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (identifying customary contingency rate of 35 percent to 40 percent); *Blackburn v. Conduent Com. Sols. LLC*, No. 1:19-CV-1229-RP, 2020 WL 9810023, at *3 (W.D. Tex. Dec. 22, 2020) (FLSA case approving 40 percent of the commons settlement fund for legal fees); *Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-00988-JKP, 2022 WL 2866411, at *4

(W.D. Tex. July 21, 2022) ("[P]roposed award of 33 1/3% of the total settlement is reasonable and consistent with awards made by other district courts in this Circuit under the percentage method."); *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *16 (W.D. Tex. Aug. 20, 2018) ("When the percentage method is used, fee awards commonly fall between 20% at the low end and 50% at the upper end."); *Lee v. Metrocare Services*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *7 (N.D. Tex. July 1, 2015) (awarding 34.78% of the common fund.); *Matthews v. Priority Energy Services, LLC,* No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018)*, report and recommendation adopted,* No. 6:15CV448, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (FLSA case approving 40 percent of the settlement fund for legal fees).

Class Counsel provides his declaration in support of this Motion which provides a lodestar crosscheck further demonstrating that the requested fee is reasonable. (App. pp. 52, ¶ 34 – 62, ¶ 40). That declaration also supports the Settlement Agreement's allocation of costs to Class Counsel in the amount of $5,909.00. (App. p. 62, ¶ 41).

Here, Plaintiff agreed to the contingency fee nature of the relationship. (App. p. 60, ¶ 40.f.) The putative collective action members, based on information in the Notice Packet, are advised that the Court has approved legal fees and costs to Class Counsel separate from the amount that will be paid to them if they complete and return a Claim Form. (App. p. 36, ¶ 5). Also, the Claims Administrator can post the Court's approval Order to the website it will create for the putative collective action members which can advise them of the specific legal fees and costs paid to Class Counsel. (App. p. 16, ¶ IV.I.; p. 20, ¶ VII.B.2.). By completing and returning a Claim Form thereafter, participating putative collective action members will have consented to Class Counsel's legal fees and costs approved by the Court. Should a putative collective action member not approve of the terms of the Settlement Agreement, including Class Counsel's legal fees and costs, then they

are not bound by the Settlement Agreement unless they return a Claim Form and receive their settlement check.

### 3. <u>Dismissal with Prejudice</u>

The Parties ask that the Court dismiss this lawsuit with prejudice upon entry of an Order granting this Motion, but that the Court retain jurisdiction over this litigation and the Parties to administer, supervise, interpret, and enforce the Settlement Agreement and its Order approving the Settlement Agreement.

## IV.   <u>CONCLUSION</u>

The Parties respectfully request that the Court grant this Motion and enter an order or orders (1) certifying a limited collective action consisting of Plaintiff and the 6,756 putative collective action members for purposes of effectuating the Settlement Agreement, (2) approving the Settlement Agreement, and (3) dismissing this lawsuit with prejudice. The Parties request such other and further relief to which they may be justly entitled.

Date: October 10, 2024.

Respectfully Submitted,

s/ *Allen R. Vaught*
Allen R. Vaught
Attorney-In-Charge
TX Bar No. 24004966
Vaught Firm, LLC
1910 Pacific Ave., Suite 9150
Dallas, Texas 75201
(972) 707-7816 – Telephone
(972) 591-4564 – Facsimile
avaught@txlaborlaw.com

**ATTORNEY FOR PLAINTIFF**

Respectfully Submitted,

By: s/ *Susan E. Cates*
Susan E. Cates
Attorney-in-Charge
State Bar No. 24044932
McFadden Trachtenberg PLLC
4200 Montrose Boulevard, Suite 300
Houston, Texas 77006
(254) 744-7734 – telephone
(254) 713-688-6789 – facsimile
susan@greatlaw.com

**ATTORNEYS FOR DEFENDANT SUPPORT SERVICES GROUP, INC.**

**CERTIFICATE OF CONFERENCE**

On October 4, 2024, I conferred with Counsel for Defendant, Ms. Susan Cates, regarding the subject matter of this Motion. On October 10, 2024, Ms. Cates indicated that Defendant agreed to the filing of this Motion.

s/*Allen R. Vaught*
Allen R. Vaught

**CERTIFICATE OF SERVICE**

On October 10, 2024, I electronically submitted the foregoing document with the Clerk of Court for the United States District Court, Western District of Texas, using the CM/ECF method. I certify that I have served all counsel of record electronically.

s/*Allen R. Vaught*
Allen R. Vaught
